UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| Doreen Gray | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. CV-2022- |
| | ) | |
| | ) | |
| Spa Tech Institute | ) | |
| | ) | |
| *Defendant* | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff Doreen Gray, by and through undersigned counsel, Garmey Law, and complains against the Defendant, Spa Tech Institute, as follows:

**INTRODUCTION**

1. Plaintiff Doreen Gray is a sixty-seven year old cosmetologist who had a thirty-year career as an Aesthetics Instructor and worked for fourteen years for Defendant, Spa Tech Institute.

2. Ms. Gray suffers from arthritis in her hands, and has for over twenty years.

3. Although her arthritis is uncomfortable and incurable, it never prevented Ms. Gray from doing her job. Until the day she was discriminatorily fired, Ms. Gray could successfully complete all essential functions of her job, and was known as one of the most effective aesthetics instructors at Spa Tech.

4. In the spring of 2021, Spa Tech undertook a campaign to terminate Ms. Gray's employment because of her age and her arthritis.

1

5. Knowing that it was illegal to fire Ms. Gray because of her age and a perceived or actual disability, Spa Tech attempted to generate false proof that Ms. Gray could not perform the essential functions of her job.

6. Spa Tech re-wrote Ms. Gray's job description in an attempt to specifically exclude her from being found competent to perform its "essential functions." Then, Spa Tech forced Ms. Gray to complete a fit-for-duty examination based on the job description they had tailor-made to exclude her.

7. Spa Tech's plan backfired when the doctor to whom Ms. Gray was sent for examination found her capable even under the new job description, but called on Spa Tech to give her simple, feasible, and reasonable accommodations as needed to adjust for her arthritis.

8. Still determined to get rid of Ms. Gray, Spa Tech responded to the fit-for-duty report by telling Ms. Gray that it would provide her such "reasonable accommodations" – but only for two weeks.

9. Spa Tech then unlawfully fired Ms. Gray on May 5, 2021.

10. Because of limited opportunities to teach aesthetics in her area, Ms. Gray's termination from Spa Tech effectively sounded the death knell on a career that she loved and intended to continue for another decade.

11. Defendant's discrimination has caused Ms. Gray to suffer economic loss and severe emotional distress.

11. In this lawsuit, Ms. Gray seeks to vindicate her rights under the Maine Human Rights Act, 5 M.R.S.A. §§4551-4634, The Americans with Disabilities Act, 42 USC §§ 12101-12213, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

**DEMAND FOR JURY TRIAL**

12. Plaintiff demands a trial by jury on all issues so triable.

**JURISDICTION AND VENUE**

13. Plaintiff Doreen Gray is a resident of the Town of Yarmouth, County of Cumberland, and State of Maine.

14. Upon information and belief, at all times material herein, Defendant Spa Tech is the assumed name of Headhunter II School of Hair Design, a Maine business corporation with a principal place of business is located in Westbrook, Maine.

15. The lawsuit arises under the under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§4551-4634, the federal Americans with Disabilities Act ("ADA"), 42 USC §§ 12101-12213, and the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.

16. This court has subject matter jurisdiction over Plaintiff's federal claims arising under ADA and ADEA pursuant to 28 U.S.C. §§ 1331 and 1343 (federal question and civil rights). This court has supplemental jurisdiction over Plaintiff's MHRA claim pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction), because the MHRA claim is so related to the federal claims that they form part of the same case or controversy.

17. Venue is proper in the District of Maine pursuant to 28 U.S.C. §1391(b)(1)(2) because a substantial part, if not all, of the events giving rise to this action happened in Maine and because Defendant Spa Tech resides in Maine.

18. This action is properly filed in Portland under Rule 3(b) of the Rules of Court, because Cumberland County is "the county in which a substantial part of the events giving rise to the claim occurred."

19. Ms. Gray filed a charge of discrimination involving the facts in this Complaint with the Maine Human Rights Commission on December 20, 2021.

20. Ms. Gray received a Notice of Right to Sue from the MHRC on July 13, 2022.

21. Ms. Gray received a Notice of Right to Sue from the EEOC on August 10, 2022.

## FACTS

22. Plaintiff Doreen Gray was born in 1955. At the time of filing of this Complaint, she is sixty-seven years old.

23. Plaintiff was, at all relevant times, a licensed cosmetologist and aesthetician.

24. Plaintiff first became a licensed cosmetologist/aesthetician in approximately 1980.

25. Plaintiff became licensed to teach aesthetics/cosmetology in approximately 1990, and began a career as an aesthetics and cosmetology.

26. "Aesthetics" is a term used to describe beauty treatments related to skin care, cosmetic application, hair removal, and related treatments.

27. Plaintiff has rheumatoid arthritis (hereinafter referred to as "RA"), which she was first diagnosed with in 2002.

28. While there is no cure for Plaintiff's RA, many who experience it continue to live with a good quality of life. Plaintiff was one of those people.

29. From 2002 until the day she was fired by Spa Tech nineteen years later, she continued to do the work she loved: teaching cosmetology and aesthetics.

30. Spa Tech hired Plaintiff as a Cosmetology Instructor in 2007. At that time, Spa Tech was not aware that Plaintiff had RA.

31. Soon after being hired, Spa Tech recruited Plaintiff to become an Aesthetics Instructor, and provided training for that position.

32. As an Aesthetics Instructor, Plaintiff's job was to teach students about skin care techniques such as facial skin care, massage techniques, application of makeup, and hair removal on the face and body.  As part of this instruction, Plaintiff also taught students how to maintain a clean and sterile environment and to perform techniques safely.  Plaintiff also handled administrative and managerial tasks related to teaching.

33. Plaintiff taught full-time from 2007 through 2021. During this time, her ability to do her job was not affected by her RA.  In other words, she could perform the job in the same manner in 2021 as she had back in 2007.

34. Not long after hiring Plaintiff, Spa Tech learned that she had RA in her hands and knees.   From 2007-2021, it never complained that Plaintiff's RA caused her any problems doing her job. It did not.

35. In 2011, Spa Tech further learned that the RA was causing her pain in one knee and that she would need a knee replacement.  Plaintiff had the knee replacement and returned to work.  Her knee no longer bothered her. From 2011-2021, Spa Tech never complained that Plaintiff's difficulty with her knee interfered with her ability to do her job. It did not.

36. In 2014, Plaintiff was asked to sign a Job Description for her role as Aesthetics Instructor. Among other requirements, the Job Description required her to prepare for and follow up on all classes, maintain classroom space, take attendance, maintain current knowledge of the institution's programs, and maintain appropriate licensures and approvals to teach her subjects. It did not identify any specific physical tasks that were required of her as an Aesthetics Instructor.

37. During the COVID-19 pandemic, Plaintiff taught online courses, but (like many other instructors) she communicated Spa Tech's management that she did not like doing so because she found it an ineffective way to teach.

### *Spa Tech's Age and Disability Discrimination*

38. Spa Tech had a policy of hiring only younger, or younger-looking, instructors.

39. Spa Tech endeavored to hire only instructors that conformed to its desired "look." When Plaintiff was originally hired by Spa Tech, she appeared significantly younger and her RA was not as apparent in her hands.

40. After being hired, Plaintiff frequently overheard management stating that certain other instructors were hired because they had "the look." This meant that they appeared young and fresh.

41. Spa Tech's managers, including Peggy York, would also frequently commented that certain young teachers were the most beautiful and expressed preference for them because of their youth and beauty.

42. By 2020, Plaintiff was the oldest student-interfacing instructor at Spa Tech's campus in Westbrook.

43. By 2020, Plaintiff was also the oldest-*looking* employee in all of Spa Tech's campus. Although some managerial employees were more than sixty years old, those employees made great efforts to look younger so that they could fit in with Spa Tech's "look." For example, such employees expended effort and expense to undergo anti-aging facial procedures.

44. By 2020, Plaintiff's RA had led to visible joint deformity in her hands. Although it caused her some discomfort, it did not impede her work as an aesthetics instructor. Again, her ability to do her job had been unchanged since she was hired in 2007.

6

45. Plaintiff was known by students and fellow instructors to be the most knowledgeable and experienced Aesthetics Instructor on staff. Her colleagues and students appreciated that she was one of the most effective teachers on staff.

46. Plaintiff's physical appearance, age, and knobby knuckles, however, did not fit with Spa Tech's desired image, and it wished to fire her because of them.

47. Plaintiff turned sixty-five at the end of 2020. As her birthday approached, Spa Tech's managers Peggy York and Charlotte Hanna often asked her when she planned to retire. Plaintiff would respond that she did not intend to retire. Jokingly, she would say, "I plan to work until I'm dead!"

48. That was not what Spa Tech wanted to hear. Knowing that Plaintiff could not be fired because of her age or because of her perceived or actual disability, Spa Tech began to attempt to find ways to fire her that could serve as a legal disguise. In short, Spa Tech hatched a plan to portray Plaintiff's continued employment as a safety problem, even though it was not.

### *Spa Tech Creates a "Paper Trail" of Pretext to Fire Plaintiff*

49. On March 9, 2021, Spa Tech employees Nancy Risley (Spa Tech's VP of Education), Peggy York (Spa Tech's Campus Director), and Charlotte Hanna (Spa Tech's Campus Director of Education) held a meeting in which they created a plan to manufacture, and document, a "safety problem" with Ms. Gray's job performance. The notes of this meeting state:

- Talk with HR. Can we require a doctor's note stating that she can do the job? Disability options?

- Is the current situation working for her? Is it working for us? Is the mission of the school being fulfilled?

- Safety concerns. When we see her struggling, discuss it with her. Is everyone in class as well as Doreen safe? Is she unstable with her hands enough to cause safety issues?

7

- *Make sure to put conversations in to the update sheets*. (Emphasis added.)

50. The same group of people met again the next day on March 10, 2021, along with Kris Stecker, Spa Tech's President. This time, they decided that they would force Ms. Gray to see a doctor to determine her ability to perform her job, and that they would only "offer her two months accommodations while she arranges medical evaluation."

51. Also on March 10, 2021, Ms. Stecker and Ms. York met with Spa Tech's compliance director, Donna Ali, to come up with a plan to terminate Ms. Gray's employment. This meeting was held because Spa Tech was aware that its actual reasons for firing Ms. Gray (her age and perceived disability) were illegal.

52. The March 10, 2021 meeting minutes reveal that Spa Tech knew that "reasonable accommodations" (to the extent even necessary) were possible to allow Doreen Gray to continue to do her job. Further, they demonstrate that Spa Tech intended to end such "accommodations" arbitrarily after two months, no matter the outcome of the medical evaluation.

53. On March 16, 2021, Spa Tech employee Charlotte Hanna filled out an "Update Form" for Ms. Gray. The issues listed on the "Update Form" were as follows: "observations of using your hands; struggles with cabinet door key, mouse pad on the laptop, concerned with safety within the classroom, this puts the school in a liability situation; request that you visit doctor within 2 weeks to determine your abilities to teach practical classes (hands on); temporarily (not long term) we can offer reasonable accommodations for a month or 2 not to exceed the 2 month time frame; online class teaching is an option."

54. The foregoing meeting minutes and "Update Form" established that Spa Tech had only vague allegations of "safety issues," and had no specific concerns about Ms. Gray's ability to perform demonstrations on human subjects.

55.     The suggestion that Ms. Gray participate in "online class teaching" was also pretextual. Spa Tech had asked Ms. Gray to teach online Zoom classes when the COVID-19 pandemic began, which she had done. Ms. Gray had complained that she did not like teaching online classes because it was ineffective and students learned nothing. She made it clear that she wanted to teach students in the classroom.

56.     If Spa Tech sincerely wished to provide Ms. Gray with "reasonable accommodations," it would not have offered online teaching. After all, the only remotely teaching-related deficiency that had been identified by Spa Tech was "struggles with the computer mouse."

57.     Spa Tech's representations that it would provide "reasonable accommodations" but only for two weeks or two months was an admission that "reasonable accommodations," if even necessary, were possible. Plaintiff had a right to continue working with these "reasonable accommodations" in place – and yet, Spa Tech informed her in no uncertain terms that they would be arbitrarily terminated after a short time.

### *Spa Tech Wrote a New Job Description and Forced Ms. Gray to Submit to an Exam*

58.     On April 1, 2021, Spa Tech provided Ms. Gray with a new job description and forced her to sign it. This new job description was substantively different from the one she had been provided in 2014, and had been hastily written with the purpose of creating justification to fire Ms. Gray.

59.     Unlike the 2014 and 2007 job descriptions, the new job description contained specific physical requirements that were designed to exclude Ms. Gray from fitness to do her job. The new job description stated that an Aesthetics Instructor must "[b]e physically able to perform all practical demonstrations required to effectively teach Aesthetics in a manner that is

safe, to include facial massage, use of electrical equipment (High frequency wands, rotary brush, microdermabrasion wand)[.]  Apply wax with small tools. Apply Chemicals to the face and neck with the use of cotton swap [sic]. Use of an extraction tool in a manor [sic] that allows for safety. Have ability to manipulate small tools in a safe manor [sic] that would not create the potential to hurt others."

60. Armed with this new job description, Spa Tech was ready to force Ms. Gray to submit to a fit-for-duty exam.

61. At the same time, and as part of its quest to force Ms. Gray to submit to a medical examination, Spa Tech began consciously trying to create a paper trail which would permit it to fire Ms. Gray.

62. As part of that paper trail, Spa Tech created an "Observation Summary" that stated that Ms. Gray "limps in her walking – seems to be in pain" and that she "cannot stand for long periods of time."  Although the Observation Summary suggested vague concerns about safely demonstrating techniques, it recorded no observations that she was actually unsafe in her demonstrations in any way.

63. At the time of the "Observation Summary," Ms. Gray did not limp, and she had not had any pain with walking or standing since she had a knee replaced several years before. Tellingly, when Ms. Gray had leg pain and needed a knee replacement over a decade earlier, Spa Tech had never mentioned any problems with Plaintiff's job performance. That is because it was not necessary to walk or stand for long periods in order to do her job well.   This new, false complaint that Ms. Gray "appeared to be in pain" when walking was, again, the result of Spa Tech trying to drum up a reason to fire Ms. Gray now that she no longer had "the look" Spa Tech desired.

64. Ms. Gray did not want to submit to a fit-for-duty exam but was informed that she would be required to attend the exam in order to continue her employment.

65. On April 7, 2022, Charlotte Hanna confronted Plaintiff as she was leaving work and tried to force her to sign an "Update Form" stating that she needed to submit to her fitness exam the following day. The form stated, "You need to get a doctor to diagnose your RA, we discussed you getting your Medicare three weeks ago this need to happen [sic]." The form again stated, "We discussed reasonable accommodations for one month but no longer then 2 [sic]."

66. On the same day, Ms. Hanna also disciplined Ms. Gray for "appearing" to be angry and attempted to make Ms. Gray sign a Warning Statement. The Warning Statement claimed that Ms. Gray's anger was "visible" in the classroom, but this was false. In fact, Ms. Gray had not exhibited anger in the classroom; out of the classroom, however, she had truthfully responded to a question from management by stating that she was angry about being forced to submit to a fit-for-duty exam. She stated that she was also frustrated that a student teacher had acted unprofessionally in the classroom by showing videos and photos of students on social media and discussing the personal lives of students in the classroom.

67. The student teacher with whom Ms. Gray was frustrated was someone that other Spa Tech instructors had refused to work with due to her unprofessionalism; Ms. Gray was, by this point, the only instructor who was still willing to mentor her. Spa Tech nonetheless preferred the student teacher, who was younger and presented the "image" that Spa Tech desired, and therefore disciplined Ms. Gray for being "angry" with the student teacher. This student teacher was someone whose youth and beauty had been specifically mentioned in staff meetings. Despite complaints from every other Aesthetics Instructor, management continued to express

preference for this student teacher because she had "the look." This student teacher is the person who would replace Ms. Gray after Ms. Gray was discriminatorily fired.

68. Because Ms. Gray was fit for duty and had acted professionally in the classroom by refusing to watch social media videos or talk about a student's personal life, she refused to sign either the "Update Form" or the "Warning Statement."

69. Ms. Gray attended the fit-for-duty exam on April 8, 2021 because she understood that she had no choice. Also pursuant to Spa Tech's duress, Plaintiff brought the brand-new job description with her.

70. The results of the fit-for-duty exam were not what Spa Tech had planned. The doctor who examined Ms. Gray determined checked the box for "May Work," although with certain accommodations. These accommodations were: no use of arms at reach, no lifting or carrying over eight pounds, and demonstrating aesthetic techniques on mannequins only.

71. Plaintiff did not actually need these physical accommodations. She could safely perform all aspects of her job, including demonstrations on humans, and she continued to do so in the same way she had been doing for over a decade.

### To the Extent Accommodations Were Necessary, Spa Tech Refused Them

72. As of April 8, 2021, Ms. Gray did not need accommodations to do her job. To the extent they were necessary or useful, however, the accommodations she needed were reasonable and feasible.

73. As of April 8, 2021, Ms. Gray could, in fact, safely demonstrate aesthetic techniques on human subjects, and she was still doing so in class. However, these techniques could be taught just as effectively by other means, including through demonstration on mannequin subjects and/or through other verbal or visual teaching techniques.

74. From the beginning of her teaching tenure at Spa Tech, Plaintiff had from time to time been demonstrating aesthetics techniques on mannequins.

75. Sometimes, it was easier for Plaintiff to demonstrate certain techniques on mannequins. Often, however, Plaintiff chose to demonstrate on mannequins simply because it was most effective.

76. Plaintiff only demonstrated on mannequins when it was equally, or more, effective than demonstrating on humans – and it always was.

77. The accommodations listed by the fit-for-duty examiner were reasonable and Spa Tech could have provided them to Ms. Gray. Instead, Spa Tech informed Ms. Gray that it would provide the accommodations for no more than two weeks, after which she would be terminated.

### *Spa Tech Fired Ms. Gray Due to Age and Disability*

78. After Plaintiff passed the "fit-for-duty" examination, Spa Tech began pressuring Plaintiff to announce her retirement. On a near-daily basis, Plaintiff was confronted by Charlotte Hanna, who would tell Plaintiff that she needed to announce her retirement. Plaintiff refused to do so.

79. On April 13, 2021, Spa Tech manager Peggy York confronted Plaintiff and forced her to sign a contract stating, "I, Doreen Gray, understand that I am not to touch a student for any reason. This includes but is not limited to all instructions and demonstrations. In response to the 'Fit for Duty' report, Spa Tech Institute will not allow you to touch students or do any demonstrations at all. Spa Tech Institute considers this a liability."

80. Ms. Gray was humiliated by being forced to sign the contract vowing "not to touch a student for any reason."

81. The contract was not justified by the fit-for-duty exam, which did not state that Plaintiff was not to "touch" students. Nor was it justified by reality, as Plaintiff could continue to perform demonstrations safely.

82. On April 29, 2021, Spa Tech President Kris Stecker reminded other Spa Tech management (Ms. Ali, Ms. York, and Ms. Hanna) to communicate with Ms. Gray via email in order to preserve the "paper trail."

83. Spa Tech fired Ms. Gray on May 5, 2021 because of her age, disability, and perceived disability.

84. Until the day she was fired in 2021, Plaintiff consistently received positive feedback and reviews from students. She was an effective aesthetics instructor and could perform all essential functions of her job.

85. Since being fired, Plaintiff has suffered extreme emotional distress over not being able to work with students, do what she loves, and earn money.

## COUNT I: AGE DISCRIMINATION

86. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if set forth fully herein.

87. Defendant has intentionally, willfully, and in reckless disregard of state and federal law, discriminated against Ms. Gray because of her age.

88. Plaintiff was fired solely or primarily as a result of her age.

89. Plaintiff was capable of doing her job and performing all of its essential functions.

90. Defendant has discriminated against Plaintiff due to her age.

91. Defendant failed to engage in the interactive process.

92. Defendant has forced Plaintiff to attend a medical examination that was not actually job-related and not consistent with business necessity.

93. Defendant's conduct violated The Maine Human Rights Act, 5 M.R.S.A. §§4551-4634 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

94. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages including, but not limited to, back pay and benefits, loss of future wages, loss of self-confidence and self-respect, humiliation and embarrassment, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, injury to dignity and well-being, and other pecuniary and non-pecuniary losses.

## COUNT II: DISABILITY DISCRIMINATION

95. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if set forth fully herein.

96. Defendant has intentionally, willfully, and in reckless disregard of state and federal law, discriminated against Ms. Gray because of her disability and perceived disability.

97. Although Plaintiff contends that her RA did not impede her ability to do her job, it is nonetheless is a "qualified disability" under the Maine Human Rights Act and the Americans with Disabilities Act. Therefore, to the extent that she could do her job with reasonable accommodations, Spa Tech was required to provide them.

98. Plaintiff could perform all essential functions of her job, despite her disability.

99. Plaintiff was fired solely or primarily as a result of her disability and perceived disability.

100. Defendant has discriminated against Plaintiff due to her perceived disability.

101. Defendant has discriminated against Plaintiff due to her disability.

15

102. Defendant failed to engage in the interactive process.

103. Defendant has forced Plaintiff to attend a medical examination that was not actually job-related and not consistent with business necessity.

104. Defendant has denied reasonable accommodations to Plaintiff.

105. Defendant's conduct violated The Maine Human Rights Act, 5 M.R.S.A. §§4551-4634, and The Americans with Disabilities Act, 42 USC §§ 12101-12213.

106. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages including, but not limited to, back pay and benefits, loss of future wages, loss of self-confidence and self-respect, humiliation and embarrassment, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, injury to dignity and well-being, and other pecuniary and non-pecuniary losses.

## COUNT III: PUNITIVE DAMAGES

107. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if set forth fully herein.

108. Defendant Spa Tech's conduct firing against Ms. Gray, as outlined above, was intentional, recklessly indifferent to her rights, and was so outrageous that malice may be implied.

109. As a result of Defendant's conduct, Plaintiff is entitled to punitive damages under the Maine Human Rights Act and federal law.

**WHEREFORE**, Plaintiff requests relief against Defendants as follows:

    a.    Compensatory damages, including back pay and benefits and future lost wages;

      b.      Compensatory damages in amounts to be determined at trial by the jury;

      c.      Punitive damages in amounts to be determined at trial by the jury;

      d.      Full expenses and reasonable attorneys' fees;

      e.      Prejudgment interest;

      f.      Such further relief as is deemed appropriate.

DATED at Portland, Maine this 2nd Day of November, 2022.

Respectfully submitted,

      /s/ *Alexis Garmey Chardon*
Alexis Garmey Chardon, Esq. Bar #5932
*Attorney for Plaintiff, Doreen Gray*
GARMEY LAW
482 Congress Street, Suite 402
Portland, ME 04101
Email: achardon@garmeylaw.com
Phone: 207-835-2060