## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DOREEN GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:22-cv-00345-NT |
| | ) |
| SPA TECH INSTITUTE, | ) |
| | ) |
| Defendant. | ) |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Before me is a motion for summary judgment filed by Defendant Spa Tech Institute ("**Spa Tech**") in a lawsuit brought by an aesthetics instructor who claims she was fired because of her age and disability in violation of the Age Discrimination in Employment Act, the Americans with Disabilities Act ("**ADA**"), and the Maine Human Rights Act ("**MHRA**"), and was refused a reasonable accommodation in violation of the ADA and MHRA. Def.'s Mot. for Summ. J. (ECF No. 20). I **DENY** the motion because there are genuine issues of material fact as to the reasons for the Plaintiff's termination and whether she could safely perform her job, with or without a reasonable accommodation.

At the time of the adverse events alleged in this case, Plaintiff Doreen Gray was a sixty-five-year-old aesthetics instructor working at Spa Tech in Westbrook, Maine. Gray accepted a teaching position with Spa Tech in 2007 in part because it required less standing than her former job as a cosmetologist. Gray had difficulty standing for long periods of time due to her rheumatoid arthritis ("**RA**"). Spa Tech hired Gray knowing that she had RA, and it accommodated her by approving medical

leave after she had surgery and switching her from a position as a cosmetology instructor to an aesthetics instructor because aesthetics required less standing and fewer repetitive movements.

In the fall of 2020, Charlotte Hanna, Spa Tech's Director of Education, inquired about Gray's retirement plans, and Gray indicated that she wanted to keep working. In March of 2021, Hanna concluded that Gray's RA was getting visibly worse after she observed that Gray had decreased ability to open and close her hands, noticed that Gray had difficulty manipulating a computer mouse and holding a pen, and witnessed Gray having difficulty manipulating a key in a lock. Hanna became concerned that Gray could not do her job (which included demonstrating aesthetic techniques on real people) safely.

For her part, Gray claims that her RA did not change the way she performed practical demonstrations from 2007 to 2021; her pain did not increase or change over that time; and she did not have increased problems opening and closing her hands, though she acknowledged that her grip had weakened to a certain extent. Gray said the lock that she struggled with was broken and a problem for everyone. She denied having trouble using a pen but admitted that she has difficulties clicking a mouse. Gray believed that she could do her job safely and without accommodation.

Spa Tech decided to require that Gray see a doctor to confirm that she could perform her job requirements. Before the appointment, Hanna revised Gray's job description to add in certain physical requirements, including "[h]ave ability to manipulate small tools in a safe manor [*sic*] that would not create the potential to

hurt others." Spa Tech also created an "observation summary" that it provided to the doctor performing Gray's fit-for-duty exam, which chronicled Hanna's observations of Gray's difficulties and indicated the importance of being able to demonstrate techniques on students in a safe manner. After a twenty-minute consultation with Gray, the examining doctor pronounced her fit for duty with three limitations: "(1) No use of arms at reach (2) No lift/carry over 8# (3) Demonstrate aesthetic techniques on mannikins [*sic*] only." In Spa Tech's view, the third limitation made it impossible for Gray to stay in the aesthetics instructor position. Spa Tech offered an online teaching position, but Gray was not interested.

Spa Tech's motion is based on the premise that Gray was terminated because she could not safely perform the duties of an aesthetics instructor because of the condition of her hands. There are, however, disputed material facts which preclude summary judgment on that issue. A reasonable jury, believing Spa Tech's witnesses, could decide that Spa Tech terminated Gray's employment due to concerns about her ability to safely perform demonstrations of aesthetic procedures on live people. A reasonable jury, believing the Plaintiff and her witnesses,[1] could also conclude that Spa Tech supervisors wanted to get rid of its oldest instructor, who had a visible physical impairment, when they realized that she did not intend to retire. To that end, a reasonable jury could believe that Spa Tech employees seized on the deformity of the Plaintiff's hands to find a "safety" concern where none had previously existed

---

[1] Gray's claims are corroborated by a former student and a coworker.

and spoon-fed the examining doctor information that would impose a deal-breaking limitation on employment as pretext for age and disability discrimination.

Summary judgment should be entered "if . . . there can be but one reasonable conclusion" come trial, but "[i]f reasonable minds could differ," judgment should not be entered for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). The facts here can go either way, and credibility determinations will be key. Because none of the claims in this case are suitable for resolution as a matter of law, the Motion for Summary Judgment (ECF No. 20) is **DENIED**.

SO ORDERED.

                                                /s/ Nancy Torresen  
                                                United States District Judge

Dated this 31st day of May, 2024.